UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-21704-BLOOM/Otazo-Reyes

SHELLY DAWN FINCH,

    Plaintiff,

v.

CARNIVAL CORPORATION,

    Defendant.
_____/

**ORDER ON MOTION TO DISMISS**

**THIS CAUSE** is before the Court upon Defendant Carnival Corporation's ("Defendant") Motion to Dismiss Plaintiff's Amended Complaint, ECF No. [20] ("Motion"), filed on July 5, 2023. Plaintiff Shelly Dawn Finch ("Plaintiff") filed a Response in Opposition to the Motion ("Response"), ECF No. [27], to which Defendant filed a Reply in Support of the Motion ("Reply"), ECF No. [28]. The Court has reviewed the Amended Complaint, the Motion, the supporting and opposing submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted in part and denied in part.

**I.    BACKGROUND**

Plaintiff filed her initial Complaint on May 5, 2023, asserting negligence claims against Defendant. ECF No. [1]. Defendant filed a Motion to Dismiss, ECF No. [13], and Plaintiff thereafter filed her Amended Complaint on June 20, 2023, ECF No. [14]. She alleges the following:

On or about November 21, 2022, Plaintiff and Decedent Steven Anthony Finch ("Decedent") were fare-paying passengers aboard Defendant's cruise ship, *Carnival Conquest*

("Vessel"), on a voyage traveling from Miami, Florida to Cozumel, Mexico. *Id.* ¶¶ 9-10. On November 21, 2022, Decedent began "suffering from a medical condition and/or medical emergency, including but not limited to, throat pain, inability to open the mouth wide open, hypertension, and hyperglycemia accompanied by tachycardia." *Id.* ¶ 11. Decedent's symptoms persisted, prompting Decedent to seek medical care from the Vessel's Medical Centre while aboard Defendant's "isolated vessel traveling across the Gulf of Mexico[.]" *Id.* ¶ 12. A nurse subsequently evaluated Decedent in his cabin on November 21, 2022 but failed to provide prompt and adequate medical treatment, provide a diagnosis, or refer Decedent to a higher level of care. *Id.* ¶¶ 13-14.

Decedent's symptoms continued to worsen. *Id.* ¶ 15. Decedent was seen again in his cabin on November 21, 2022 and was then taken to the Vessel's Medical Centre where he was evaluated by a physician. *Id.* ¶¶ 15-16. The medical staff in the medical center failed to provide "prompt, appropriate and adequate medical treatment[]" leading to the worsening of Decedent's symptoms. *Id.* ¶ 17. Defendant's medical staff monitored Decedent but failed to recognize or diagnose the "obvious and alarming signs of an infection." *Id.* ¶ 18-19. Had they done so, "the decedent would have made a full recovery and would not have passed away as a result of the illness." *Id.* ¶ 19. On November 22, 2022, Decedent was transported off the Vessel and brought to Lower Keys Medical Center in Key, West, Florida where Decedent remained until approximately 11:00 p.m. *Id.* ¶ 25. Decedent was then transported to Mount Sinai Medical Center and expired from "cardiopulmonary arrest, aspiration pneumonia, sepsis, multiorgan failure, septal myocardial infarction, plus three additional cardiopulmonary arrests" on November 23, 2022. *Id.* ¶¶ 24-26.

In Count I, Plaintiff contends Defendant owed Decedent a duty "to provide prompt, appropriate and reasonable medical care following the symptoms he presented to the Medical

Centre[]; a duty to provide Decedent "proper, adequate, and reasonable medical care as to not cause further suffering and potential death"; and a duty to provide "passengers with medical treatment at the Medical Centre[.]" *Id.* ¶¶ 27-28, 30. The Amended Complaint alleges that Defendant—through its crew, agents, employees, and/or independent contractors—breached its duty in one or more of the following ways:

   a. Failing to have proper medical facilities onboard to treat illnesses/injuries such as ones suffered by STEVEN ANTHONY FINCH;
   b. Failing to have proper medical equipment onboard to treat and diagnose illnesses/injuries such as ones suffered by STEVEN ANTHONY FINCH;
   c. Failing to have a proper Medical Centre onboard to provide ongoing treatment for patients in need of extended critical care;
   d. Failing to have properly trained medical personnel onboard to treat and care for illnesses/injuries such as ones suffered by STEVEN ANTHONY FINCH;
   e. Failing to provide proper, adequate, and reasonable medical care to STEVEN ANTHONY FINCH;
   f. Failing to make necessary arrangements to transport a passenger suffering illnesses/injuries, such as ones suffered by STEVEN ANTHONY FINCH, off of the vessel and to a facility that could provide appropriate emergency medical care;
   g. Failing to provide necessary resources for STEVEN ANTHONY FINCH to obtain emergency medical attention as required his illness/injury;
   h. Preventing STEVEN ANTHONY FINCH from receiving the proper medical attention and treatment as required by his illnesses/injury;
   i. Failing to timely diagnose STEVEN ANTHONY FINCH's condition and allowing to his subsequent cardiopulmonary arrest, aspiration pneumonia, sepsis, multiorgan failure, septal myocardial infarction, three additional cardiopulmonary arrests, and eventual demise;
   j. Failing to properly assess the condition of STEVEN ANTHONY FINCH and allowing his subsequent death;
   k. Failing to appropriately treat STEVEN ANTHONY FINCH so as to avoid and/or prevent his subsequent cardiopulmonary arrest, aspiration pneumonia, sepsis, multiorgan failure, septal myocardial infarction, three additional cardiopulmonary arrests, and eventual demise;
   l. Failing to provide STEVEN ANTHONY FINCH with the proper medication as required by his condition;
   m. Failing to timely contact the Coast Guard and arranging for STEVEN ANTHONY FINCH to disembark the ship while suffering from a serious medical condition, respiratory failure, cardiac arrest, and a possible seizure;
   n. Deviating from the standard of care when treating STEVEN ANTHONY FINCH's illness and causing his subsequent cardiopulmonary arrest, aspiration

      pneumonia, sepsis, multiorgan failure, septal myocardial infarction, three additional cardiopulmonary arrests, and eventual demise;

o. Deviating from the standard of care for patients in STEVEN ANTHONY FINCH's condition who require intubation with an endotracheal tube, and instead got a laryngeal mask airway placed;

p. Failing to properly monitor STEVEN ANTHONY FINCH's condition in order to prevent him from subsequently developing cardiopulmonary arrest, aspiration pneumonia, sepsis, multiorgan failure, septal myocardial infarction, three additional cardiopulmonary arrests, and eventual demise;

q. Failing to properly care for and treat STEVEN ANTHONY FINCH while he remained under the care of the Medical Centre in order to prevent his subsequent cardiopulmonary arrest, aspiration pneumonia, sepsis, multiorgan failure, suffer a septal myocardial infarction, three additional cardiopulmonary arrests, and eventual demise;

r. Failing to train its crew members, staff, employees, agents, and/or independent contractors, how to properly respond to and care for ill passengers with symptoms like STEVEN ANTHONY FINCH aboard the ship;

s. Failing to develop, maintain, and utilize reasonable and proper safety policies, procedures, and protocols to adequately respond to and care for ill and/or injured passengers like STEVEN ANTHONY FINCH aboard the ship;

t. Failing to conduct an appropriate investigation into the backgrounds of the Medical Centre's doctors and nurses, to determine if they were qualified to practice emergency medicine and to handle examinations and evaluations of catastrophic injuries;

u. Failing to hire medical personnel, including the doctor and nurse, that had appropriate training and/or experience in emergency medicine, including evaluation of severe illness/injury;

v. Failing to hire medical personnel which were qualified and/or sufficiently trained and experienced in the use of diagnostic equipment that was onboard the vessel, which could have been used for diagnostic testing and evaluation of decedent's injuries;

w. Failing to provide appropriate training and procedures to the medical personnel, including the doctors and nurses, for use of the ship's equipment for diagnostic testing;

x. Failing to provide its medical personnel with appropriate training and procedures for triage and referral to shore facilities or physician;

y. Failing to hire medical personnel, including the doctors and nurses, that had appropriate training and/or experience in treating and caring for a stationary patient;

z. Failing to order appropriate diagnostic scans to further assess the degree of injury;

aa. Failing to obtain consultations with appropriate specialists to diagnose and treat decedent's injuries.

*Id.* ¶ 32.

In Count II, Plaintiff alleges that Defendant had a "duty to provide competent, well-trained, and adequate medical personnel, training, policies, and procedures for its passengers[,]" and that Defendant is "liable to the Plaintiff for any and all damages as a result of negligent medical care conducted by the Medical Centre's staff, including the doctor and/or nurse, under a theory of apparent agency." *Id.* ¶¶ 37, 46.

Count III alleges that Defendant "owed a duty to use reasonable care in hiring and/or retention of all medical personnel," as well as "a duty to hire medical personnel who were adequately qualified, trained, and experienced. *Id.* ¶¶ 47-48. Defendant was negligent in the following ways:

   a. Failing to conduct an appropriate investigation into the backgrounds of the medical personnel, including the doctor and nurse, to determine if they were qualified to practice emergency medicine and to handle examinations and evaluations of severe illnesses;
   b. (b) Failing to hire medical personnel, including the doctors and nurses, that had appropriate training and/or experience in emergency medicine, including evaluation of severe illnesses;
   c. (c) Failing to hire medical personnel which were qualified and/or sufficiently trained and experienced in the use of the diagnostic equipment that was onboard the vessel, which could have been used for diagnostic testing and evaluation of the decedent's illness/injury;
   d. (d) Failing to provide appropriate training and procedures to the medical personnel, including the doctor and nurse, for use of the ship's equipment for diagnostic testing;
   e. (e) Negligently retaining the medical personnel, including the doctor and nurse, without providing appropriate training and procedures for triage and referral to shore facilities or physician;
   f. (f) Failing to hire medical personnel, including the doctors and nurses, that had appropriate training and/or experience in treating and caring for a coding patient.

*Id.* ¶ 54.

Defendant moves to dismiss Counts I and III pursuant to Rule 12(b)(6). Defendant argues Counts I and III constitute shotgun pleadings because they commingle multiple causes of action. Defendant also argues that the Amended Complaint should be dismissed for lack of subject-matter

jurisdiction, and Plaintiff seeks relief barred by the Death on the High Seas Act. Plaintiff contends the Amended Complaint is not a shotgun pleading, the Court has subject matter jurisdiction, and a determination that the Death on the High Seas Act cannot be determined at the pleading stage.

## II.     LEGAL STANDARD

### A.  Shotgun Pleading

A "shotgun pleading[]" is a Complaint that violates either Rule 8(a)(2) or 10(b), or both. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). There are four types of shotgun pleadings:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type . . . is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Id.* at 1321-23 (11th Cir. 2015) (alteration added; footnote call numbers omitted). The "unifying characteristic" of shotgun pleadings is accordingly the failure "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323 (footnote call number omitted). The Eleventh Circuit has repeatedly and unequivocally condemned shotgun pleadings as a waste of judicial resources. "Shotgun pleadings, whether filed by plaintiffs or defendants, exact an intolerable toll on the trial court's docket, lead to unnecessary and unchanneled discovery, and impose unwarranted expense on the litigants, the court and the court's para-judicial personnel and resources. Moreover, justice is delayed for the litigants who are

6

'standing in line,' waiting for their cases to be heard." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356-57 (11th Cir. 2018) (quoting *Cramer v. Fla.*, 117 F.3d 1258, 1263 (11th Cir. 1997)).

### B. Failure to State a Claim for Relief

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). When a defendant moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the court must accept the plaintiff's allegations as true and evaluate all possible inferences derived from those facts in favor of the plaintiff. *See Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1079 (S.D. Fla. 2019).

### C. Death on the High Seas Act

The Death on the High Seas Act ("DOHSA"), 46 U.S.C.A. § 30302 *et seq.*, is the exclusive remedy when the death of an individual is caused by wrongful acts, neglect, or default occurring on the high seas beyond twelve nautical miles from the shore of the United States. *See* 46 U.S.C.A. § 30302; *see also Ford v. Wooten*, 681 F.2d 712, 716 (11th Cir. 1982) ("Where a cause of action exists for wrongful death under DOHSA, no additional action exists under general maritime law

for wrongful death."). "Whether DOHSA is the applicable law is determined by the location where the negligence occurred." *Dome v. Celebrity Cruises Inc.*, 595 F. Supp. 3d 1212, 1221 (S.D. Fla. 2022) (citing *Perricone v. Carnival Corp.*, No. 15-20309-CV, 2016 WL 1161214, at *5 (S.D. Fla. Mar. 24, 2016)). DOHSA limits recovery to pecuniary losses. 46 U.S.C.A. § 30303; *Sexton v. Carnival Corporation*, 504 F. Supp. 3d 1359, 1363 (S.D. Fla. 2020) ("non-pecuniary damages, such as the damages sought by the Plaintiff for pain and suffering and mental anguish, are not recoverable when DOHSA applies.").

## III.  DISCUSSION

As an initial matter, Plaintiff's Amended Complaint establishes that this Court has subject-matter jurisdiction through admiralty jurisdiction.[1] "Personal-injury claims by cruise ship passengers, complaining of injuries suffered at sea, are within the admiralty jurisdiction of the district courts." *Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1365 (11th Cir. 2018) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 587-88, 111 S.Ct. 1522, 1524, 113 L.Ed.2d 622 (1991)). "Maritime law governs actions arising from alleged torts committed aboard a ship sailing in navigable waters." *Guevara v. NCL (Bah.) Ltd.*, 920 F.3d 710, 720 (citing *Keefe v. Bah. Cruise Line, Inc.*, 867 F.2d 1318, 1320-21 (11th Cir. 1989)).

"In analyzing a maritime tort case, [courts] rely on general principles of negligence law." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (quoting *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980)). "To prevail on a negligence claim, a plaintiff must show that '(1) the defendant had a duty to protect the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm.'" *Guevara*, 920 F.3d at 720 (quoting *Chaparro*,

---

[1] Defendant's Motion argued that the Court lacked subject-matter jurisdiction. Motion at 6. Defendant withdrew this argument in Reply. *See* Reply at 3-4.

693 F.3d at 1336). "Each element is essential to Plaintiff's negligence claim and Plaintiff cannot rest on the allegations of her complaint in making a sufficient showing on each element for the purposes of defeating summary judgment." *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1236-37 (S.D. Fla. 2006).

The duty of reasonable care requires, "as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." *Keefe*, 867 F.2d at 1322. "In contrast, a shipowner's duty to a plaintiff is not relevant to a claim based on vicarious liability." *Holland v. Carnival Corp.*, 50 F.4th 1088, 1094 (11th Cir. 2022). "When the tortfeasor is an employee, the principle of vicarious liability allows 'an otherwise non-faulty employer' to be held liable 'for the negligent acts of [that] employee acting within the scope of employment.'" *Id.* (quoting *Langfitt v. Fed. Marine Terminals, Inc.*, 647 F.3d 1116, 1121 (11th Cir. 2011) (citation omitted)). "In other words, liability for the agent's negligence is legally imputed to the non-negligent principal." *Id.* (citing *Meyer v. Holley*, 537 U.S. 280, 285-86, 123 S. Ct. 824, 154 L. Ed. 2d 753 (2003)).

### A. Shotgun Pleading

Defendant contends that Counts I and III constitute shotgun pleadings because both Counts impermissibly commingle multiple causes of action within the same Count.[2] For the reasons discussed below, the Court finds that Counts I and III constitute shotgun pleadings requiring dismissal.

---

[2] Because Defendant argues only that Counts I and III constitute shotgun pleadings, the Court will not consider whether the Amended Complaint improperly commingles theories of liability based on vicarious liability (Count I) and apparent agency (Count II).

### i.   Count I

Defendant argues that Count I is an impermissible shotgun pleading because it asserts a claim for negligent medical care and treatment but contains allegations "which commingle the elements of other causes of action such as negligent hiring, retention, training, and monitoring or supervision." ECF No. [20] at 4. Plaintiff responds that Count I sufficiently alleges a single cause of action for negligent medical care and treatment, complete with twenty-seven breaches of Defendant's duty of care to ensure that "each of Defendant's many breaches can be easily deciphered and understood[.]" ECF No. [27] at 9. Plaintiff additionally argues that both Counts I and III do not constitute shotgun pleadings because Defendant has not shown that "'it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief[,]'" and because it is easy to understand which allegations support each cause of action. *Id.* at 9-10 (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1325 (11th Cir. 2015)). The Court disagrees.

The authorities provided by Defendant illustrate Count I's deficiencies.  In *Anders v. Carnival Corp.*, No. 23-21367-CIV, 2023 WL 4252426 (S.D. Fla. June 29, 2023), the court observed that the "[p]laintiff may allege a list of failures, i.e., different breaches of the same duty, within the same general negligence claim." *Id.* at *4. The court nonetheless found that the plaintiff's complaint constituted a shotgun pleading for bringing "a claim of negligent training within [plaintiff's] general negligence claim." *Id.* In *Reed v. Royal Caribbean Cruises, Ltd.*, No. 19-24668-CIV, 2021 WL 2592914 (S.D. Fla. Apr. 23, 2021), the court found that plaintiff's complaint constituted a shotgun pleading by pleading multiple causes of action within a single count, complete with "eleven separate ways in which Defendant breached its duty of care." *Id.* at *8. In *Doe v. Carnival Corp.*, 470 F. Supp. 3d 1317 (S.D. Fla. 2020), the court found that the

plaintiff's complaint did *not* constitute a shotgun pleading despite "improperly commingl[ing] elements of one cause of action (negligent training) with another cause of action (negligent monitoring or supervision)." *Id.* at 1323. The court reached this conclusion after determining that the Defendant "has demonstrated its understanding of the elements of [the] negligent training and negligent monitoring claims against it." *Id.* The court also noted that "[t]his is not, for example, a case where the plaintiff recites 41 alleged breaches under one claim of negligence." *Id.* (citation omitted).

Here, Plaintiff's Amended Complaint contains twenty-seven alleged breaches of Defendant's duty to provide reasonable medical care. Several of those alleged breaches constitute elements of other causes of action, namely, negligent hiring and training. Paragraph 32(d), for instance, alleges that Defendant breached its duty to provide reasonable medical care by "[f]ailing to have properly trained medical personnel onboard to treat and care for illnesses/injuries such as ones suffered by [Decedent.]" ECF No. [14] ¶ 32(d). Count I proceeds to list several alleged breaches by Defendant based on its failure to adequately hire or train its medical personnel. *See, e.g.*, *id.* ¶¶ 32(r)-(u) ("Failing to train its crew members, staff, employees, agents, and/or independent contractors, how to properly respond to and care for ill passengers with symptoms like [Decedent]"); ("Failing to develop, maintain, and utilize reasonable and proper safety policies, procedures, and protocols to adequately respond to and care for ill and/or injured passengers like [Decedent]"); ("Failing to conduct an appropriate investigation into the backgrounds of the Medical Centre's doctors and nurses, to determine if they were qualified to practice emergency medicine and to handle examinations and evaluations of catastrophic injuries"); ("Failing to hire medical personnel, including the doctor and nurse, that had appropriate training and/or experience in emergency medicine, including evaluation of severe illness/injury").

Count I accordingly "epitomizes a form of 'shotgun' pleading" by alleging that Defendant owed a duty to Decedent "then proceed[ing] to allege at least twenty-one ways in which Defendant breached this duty." *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1337 n.2 (S.D. Fla. 2012) (quoting *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 164 (11th Cir. 1997)). Like *Reed*, Plaintiff's Amended Complaint improperly commingles multiple causes of action within Count I. *Reed*, 2021 WL 2592914, at *8. Here, Count I does so by alleging numerous—and inconsistent—breaches of the duty to provide reasonable medical care. As discussed below, however, negligent training and negligent hiring claims are distinct causes of action with different elements requiring different findings.

"To state a claim of negligent training, Plaintiff must allege Defendant 'was negligent in the implementation or operation of the training program and the negligence cause[d] [his] injury.'" *Anders*, 2023 WL 4252426, at *4 (quoting *Diaz v. Carnival Corp.*, 555 F. Supp. 3d 1302, 1306 (S.D. Fla. 2021)). "Negligent hiring occurs when, 'prior to the time the employee is actually hired, the employer knew or should have known of the employee's unfitness, and the issue of liability primarily focuses upon the adequacy of the employer's pre-employment investigation into the employee's background.'" *McFee v. Carnival Corp.*, No. 19-CV-22917, 2020 U.S. Dist. LEXIS 21062, at *14 (S.D. Fla. Feb. 3, 2020) (quoting *Mumford v. Carnival Corp.*, 7 F. Supp. 3d 1243, 1249 (S.D. Fla. 2014)). As noted, several of the allegations in Count I assert liability based on Defendant's failure to adequately train or hire medical personnel. The Court agrees with *Reed* that both the numerosity of those inconsistent allegations and the commingling of multiple causes of action therein can serve as "independent reasons … [for finding] Count I constitutes a shotgun pleading in that it 'commits the sin of not separating into a different count each cause of action or claim for relief.'" *Reed*, 2021 WL 2592914, at *8 (quoting *Weiland*, 792 F.3d at 1323 (11th Cir.

2015)). Plaintiff purports to separately plead those claims under Count III of the Amended Complaint but that does not save it as Count I improperly alleges numerous inconsistent breaches of Defendant's duty to provide reasonable medical care, and commingles distinct causes of action—negligent hiring and negligent training—in the process. The Court accordingly finds that Count I constitutes an impermissible shotgun pleading requiring dismissal.

      **ii.**    **Count III**

Defendant argues that Count III is a shotgun pleading because it also commingles multiple causes of action. Defendants contends Count III constitutes a shotgun pleading because these causes of action—negligent hiring, negligent retention, and negligent training—are different causes of action with distinct elements requiring separate findings. Plaintiff responds that Count III pleads these causes of actions in a single count because "it deals specifically with the manner in which the Defendant interacted or failed to interact with its apparent agents and medical staff." Response at 9. Plaintiff maintains that Count III satisfies Rules 8(a)(2) and 10(b) because it alleges plausible claims separated in a manner that permits Defendant to discern each cause of action.

The Court finds that Count III also constitutes an impermissible shotgun pleading. Defendant accurately observes that negligent hiring, negligent retention, and negligent training are different causes of action with distinct elements requiring separate findings. As discussed above, negligent training and negligent hiring claims are distinct causes of action with different elements. The same is true for negligent retention claims. "Liability for negligent retention 'occurs after employment begins, where the employer knows or should know of an employee's unfitness and fails to take further action such as investigating, discharge or reassignment.'" [3] *McFee*, 2020 U.S. Dist. LEXIS 21062, at *14 (quoting *Malicki v. Doe*, 814 So. 2d 347, 362 n. 15 (Fla. 2002)).

---

[3] These claims are alternatively referred to as negligent supervision claims. *See, e.g.*, *Doe v. NCL (Bahamas) Ltd.*, Case No.: 1:16-cv-23733-UU, 2016 WL 6330587, at *4 (S.D. Fla. Oct. 27, 2016) (quoting

Accordingly, "[t]he principal difference between negligent hiring and negligent retention as a basis for employer liability is the time at which the employer is charged with knowledge of the employee's unfitness." *Mumford v. Carnival Corp.*, 7 F. Supp. 3d 1243, 1249 (S.D. Fla. 2014) (citing *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1318 (M.D. Fla. 2002)). Negligent training claims alternatively focus not on the unfitness of an employee but on the defendant-employer's negligent implementation of an employee training program.

Consistent with the distinctions between these three negligence claims, courts have routinely dismissed complaints that combine these causes of action into a single count as shotgun pleadings.[4] *Reed* 2021 WL 2592914, at *9 ("negligent supervision and negligent training are separate claims which must be pled separately[]"); *Burgess v. Royal Caribbean Cruises Ltd.*, Case No. 20-CV-20687, 2020 U.S. Dist. LEXIS 188606, at *4-5 (S.D. Fla. Oct. 9, 2020) (claim titled "Negligent Hiring, Selection, Retention, Monitoring and Training" is an impermissible shotgun pleading because "[t]hese counts combine different causes of action that have distinct elements of law and require different findings"); *Baldoza v. Royal Caribbean Cruises, Ltd.*, No. 20-22761-CIV, 2021 WL 243676, at *5-6 (S.D. Fla. Jan. 25, 2021) (dismissing a cause of action titled "Negligent Hiring, Training, Supervision, and/or Retention" as an impermissible shotgun pleading because those claims must be pled separately); *McFee*, 2020 U.S. Dist. LEXIS 21062, at *20-21 (S.D. Fla. Feb. 3, 2020) (finding that claim titled "Assumption of Duty (Negligent supervision

---

*Cruz v. Advance Stores Co.*, 842 F. Supp. 2d 1356, 1359 (S.D. Fla. 2012) ("Negligent supervision 'occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigating, discharge, or reassignment.'")).

[4] As the court in *Baldoza* observed, two cases that found the plaintiffs joint claims for negligent hiring and retention did *not* constitute shotgun pleadings are distinguishable, "as the defendants there did not raise the argument that the negligent hiring and retention count at issue was a shotgun pleading." *Baldoza*, 2021 WL 243676, at *6 n.2 (citing *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1318-19 (M.D. Fla. 2002); *Gayou v. Celebrity Cruises, Inc.*, No. 11-23359, 2012 WL 2049431, at *5 n.2 (S.D. Fla. June 5, 2012))).

and/or training)" contained two separate causes of action rendering the claim an impermissible shotgun pleading).

As in *Reed*, *Burgess*, *Baldoza*, and *McFee*, the Court finds that Count III of the Amended Complaint constitutes a shotgun pleading for failing to separately plead claims for negligent supervision, negligent training, and negligent hiring. Count III alleges that Defendant had "a duty to use reasonable care in hiring and/or retention of all medical personnel," and a duty "to hire medical personnel who were adequately qualified, trained, and experienced[.]" ECF No. [14] ¶¶ 47-48. Moreover, Count III alleges that Defendant "breached its duty of care with regard to the hiring and/or retention of the ship's medical staff" and proceeds to list several breaches of this combined duty.[5] *Id.* ¶ 54(a). Included in this combined duty—as well as the alleged breaches of the combined duty—is a negligent training claim articulated as a subset of Plaintiff's negligent hiring and retention claims.

Count III accordingly commingles the elements of all three causes of action and similarly nestles a negligent training claim within the negligent hiring and retention claims. It is therefore difficult to discern which causes of action are supported by which allegations, or if Plaintiff states plausible claims for relief for all three causes of action. Count III accordingly must also be dismissed as an impermissible shotgun pleading.

**B. DOHSA**

Defendant also argues that DOHSA applies to Plaintiff's claims. Although Plaintiff's Amended Complaint is due to be dismissed with leave to amend, the Court "addresses this

---

[5] *See, e.g.*, ECF No. [14] ¶¶ 54(b)-(f) ("Failing to hire medical personnel … that had appropriate training"); ("Failing to hire medical personnel which were qualified and/or sufficiently trained"); ("Failing to provide appropriate training and procedures to the medical personnel"); ("Negligent retaining the medical personnel … without providing appropriate training"); ("Failing to hire medical personnel … that had appropriate training").

15

argument to curtail similar arguments from being raised after an amended complaint is filed." *Anders*, 2023 WL 4252426, at *5.

Defendant argues that Plaintiff's claims are subject to DOHSA, 46 U.S.C.A. § 30302 *et seq.*, because Plaintiff's allegation that Decedent was "aboard an isolated vessel traveling across the Gulf of Mexico" when seeking medical care from Defendant establishes that the death occurred on the high seas. ECF No. [14] ¶ 12. Defendant accordingly contends that Plaintiff's Amended Complaint should be dismissed for seeking relief bared under DOHSA, namely, damages sought for pain and suffering and mental anguish, loss of capacity for enjoyment of life, and a demand for a jury trial.

Plaintiff responds that DOHSA is inapplicable because the Amended Complaint does not allege that Decedent's death occurred on the high seas. Plaintiff cites *Dome v. Celebrity Cruises Inc.*, 595 F. Supp. 3d 1212 (S.D. Fla. 2022) for support. Plaintiff also argues that Defendant's reliance on *Kennedy v. Carnival Corp.*, 385 F. Supp. 3d 1302 (S.D. Fla. 2019) is misplaced because unlike here, the location of the injury was undisputed.

Defendant replies that *Dome* is distinguishable because the plaintiff failed to specify whether the injury occurred on the high seas. Defendant contends that here, like *Kennedy*, Plaintiff's allegations establish that the wrongful act leading to Decedent's death occurred on the high seas. Alternatively, Defendant requests that the Court deny without prejudice so that the applicability of DOHSA may be determined at summary judgment.

In *Dome*, the court declined to apply DOHSA at the pleadings stage because the plaintiff failed to specifically allege that the decedent died on the high seas. *Dome*, 595 F. Supp. 3d 1212, 1222. The court rejected the defendant's argument that the plaintiff's allegations that the decedent "began to experience symptoms of COVID-19 while aboard the Eclipse on March 29, 2020"

established that the plaintiff "'alleges [that decedent] … contracted COVID-19 on the high seas[.]'" *Id.* at 1222. Instead, the court concluded that these allegations were insufficient to establish that DOHSA applied. *Id.* In *Kennedy*, the plaintiff alleged "that the Decedent was injured while participating in the Isla Pasion shore excursion in Cozumel, Mexico[.]" The court found that DOHSA applied after observing that "the prevailing rule in the Eleventh Circuit, consistent with rulings in numerous courts around the country, is that maritime incidents occurring within the territorial waters of foreign states still fall within DOHSA." *Kennedy*, 385 F. Supp. at 1302 (citing *Moyer v. Rederi*, 645 F. Supp. 620 (S.D. Fla. 1986); *Sanchez v. Loffland Brothers Company*, 626 F.2d 1228 (5th Cir. 1980)). DOHSA accordingly applied, as the plaintiff's "injury indisputably occurred in the water." *Kennedy*, 385 F. Supp. 3d at 1311, 1315.

The Court finds that *Cone* is analogous to the case at bar and therefore declines to apply DOHSA at the pleadings stage. As in *Cone*, Plaintiff's Amended Complaint "fails to specifically allege whether the [Vessel] was on the high seas." *Cone*, 595 F. Supp. at 1222. Plaintiff concedes this omission was intentional because the precise location and time of injury is unknown. Due to this ambiguity, the Court similarly "cannot determine at this time whether DOHSA applies to Plaintiffs' claims." *Id.* Moreover, as in *Cone*, although it could be the case that Decedent's injury and Defendant's wrongful conduct occurred beyond twelve miles from shore, this determination is properly made with the benefit of discovery.[6] *Id.* (citing *Macias v. Celebrity Cruises Inc.*, No. 21-CIV-20813, 2021 WL 5853585, at *6 (S.D. Fla. Nov. 19, 2021), *report and recommendation adopted*, No. 21-CIV-20813, 2021 WL 5834269 (S.D. Fla. Dec. 8, 2021)). Unlike *Kennedy*, it is disputed where the wrongful conduct and injury occurred. *Kennedy's* reasoning is also inapposite,

---

[6] Finding that DOHSA applies is particularly inappropriate here, as the court must accept the plaintiff's allegations as true and evaluate all possible inferences derived from those facts in favor of the plaintiff. *See Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1079 (S.D. Fla. 2019).

17

as the Amended Complaint does not allege that Decedent's injury occurred in the territorial waters of a foreign state. The Court accordingly determines that DOHSA does not presently bar the relief sought in Plaintiff's Amended Complaint. Defendant's request that the Court dismiss the Amended Complaint for seeking relief barred under DOHSA is therefore denied without prejudice.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss Plaintiff's Amended Complaint, **ECF No. [14]**, is **GRANTED in part and DENIED in part**.

2. Counts I and III of the Amended Complaint are **DISMISSED WITHOUT PREJUDICE**.

3. Plaintiff shall file an amended complaint consistent with this order **by November 17, 2023**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 6, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc: Counsel of Record